FILED

APR 2 9 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SANDRA SILVIA,                                          CV. 07-1677-PK

                                                        OPINION AND
                                                        ORDER
                    Plaintiff,

v.


MULTNOMAH COUNTY, et al.,



                    Defendants.
_____

PAPAK, Magistrate Judge:

    This suit commenced on November 8, 2007 as a 42 U.S.C. § 1983 putative class action

alleging that the defendants Multnomah County and Multnomah County Sheriff Bernie Guisto

violated the plaintiffs' Fourth Amendment right to be free from unreasonable searches by

maintaining an unlawful strip search policy at the Multnomah County Detention Center.  In

December 2008, plaintiff Sandra Silvia filed a second amended complaint, which excluded the

Page 1 - OPINION AND ORDER

class allegations and pursued a single cause of action for a violation of her Fourth Amendment

rights. The parties settled the case and this matter is before the court on defendants' opposition to

Silvia's Motion for Attorneys' Fees. For the reasons set forth below, I grant in part and deny in

part Silvia's Motion for Attorneys' Fees (#44), resulting in a total fee award of $3,975.

## LEGAL STANDARD

Under 42 U.S.C. § 1988, a court may award the prevailing party in a § 1983 claim "a

reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). "A trial court abuses its

discretion if its fee award is based on an inaccurate view of the law or a clearly erroneous finding

of fact." *McCown v. City of Fontana*, 550 F.3d 918, 922 (9th Cir. 2008). A district court,

however, "acts within its discretion in awarding fees when the amount is reasonable and the court

fully explains its reasoning in making the award." *Id.*

## FACTUAL BACKGROUND

The original complaint in this action alleged that the Multnomah County Sheriff's

Department had a policy of strip searching all individuals who enter the Multnomah County

Detention Center and are placed in jail clothing, regardless of the charged crime. In July 2008,

the court granted plaintiffs' motion to amend the complaint to allow the addition of five

plaintiffs, including Sandra Silvia, who were strip searched at the Detention Center.

Defendants filed their motion for summary judgment on September 3, 2008, arguing that

plaintiffs could not prove defendants had a policy of strip searching all individuals placed in jail

clothing. Defendants offered their written strip search policy as evidence, along with affidavits

from officials responsible for overseeing the strip search policy, to demonstrate that the County

does not strip search all individuals who enter the Detention Center and are placed in jail

Page 2 - OPINION AND ORDER

clothing.  Plaintiffs responded by requesting an extension of discovery deadlines.  The court

granted the motion, extending discovery deadlines to November 17, 2008.

On November 19, 2008, five of the plaintiffs voluntarily dismissed their claims, leaving

Silvia as the sole remaining plaintiff.  Silvia then filed a second amended complaint on

December 8, 2008.  The second amended complaint dropped the allegation that the Multnomah

County Sheriff's Department had a blanket strip search policy and instead alleged that the

Sheriff's Department failed to train deputies on the charges and prior convictions that justified a

strip search.  In addition, the second amended complaint abandoned the class allegations of the

original and first amended complaint and added two individual officers as defendants.

In light of the changes in the case wrought by the second amended complaint, defendants

withdrew their motion for summary judgment.  At the same time, defendants made an offer to

settle the matter for $5,001, plus "reasonable, legally recoverable attorney fees and costs incurred

by the plaintiff through the date of this Offer to Allow Judgment."   Silvia accepted the offer on

December 15, 2008.

The parties were unable to reach an agreement on attorney fees.  That issue is now before

the court.

## ANALYSIS

Courts begin their assessment of an attorney fees award with the lodestar figure, "the

number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."

*Miller v. Los Angeles County Bd. of Educ.*, 827 F.2d 617, 621 (9th Cir. 1987).  The party seeking

the award should provide documentary evidence to the court concerning the number of hours

spent and how it determined the hourly rate.  *McCown*, 550 F.3d at 922.  The district court may

reduce the hours "where the documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; [or] if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).

In determining what constitutes a reasonable fee, the district court should take into account any of the following factors that it finds to be relevant: 1) the time and labor required; 2) the novelty and difficulty of the questions involved; 3) the skill required; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) time limitations; 7) the amount involved and the results obtained; 8) the experience, reputation, and ability of the attorneys; 9) the "undesirability" of the case; 10) the nature and length of the professional relationship with the client; and 11) awards in similar cases. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 n.2 (9th Cir. 2000).

Although a court may adjust the lodestar amount, courts apply a strong presumption that the lodestar figure represents a reasonable fee. *Miller*, 827 F.2d at 621. The court may not adjust the lodestar amount solely based on (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, and (4) the results obtained. *Chalmers*, 796 F.2d at 1212. These factors are subsumed in the court's lodestar calculation and therefore cannot serve as independent bases for adjusting the fee award. *Id.*

## I.    Reasonable Hourly Rate

In determining the reasonable hourly rate, the courts look to the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The courts of this district use the most recent Oregon State Bar Economic Survey as a benchmark to determine the prevailing

market rate, and adjust the survey rates for inflation between the date the survey was published

and the date the legal services were performed.   *See, e.g., Clark v. Capital Credit & Collection

Servs.,* 561 F. Supp. 2d 1213, 1218 (D. Or. 2008).   The most recent Oregon State Bar Economic

Survey[1] was published in December 2007 and the average rate of inflation from 2007 to 2008

rounds to four percent.[2]

       Here, plaintiff's counsel, Leonard Berman, seeks $250 per hour for the work he performed

on this case.   He currently has approximately 13 years of experience as a solo practitioner,

including ten years focusing on civil litigation, including civil rights, strip search and excessive

force cases.   In light of the fact that he did not begin his practice in civil litigation, and had

roughly 12 years of experience at the time he commenced the litigation, I look to the Oregon

State Bar Economic Survey rates for attorneys with 10 to 12 years of experience as the

appropriate measure.   His $250 per hour rate falls above the $244.40 per hour, inflation-adjusted

average rate for Portland attorneys with 10 to 12 years of experience and the $234 inflation-

adjusted median rate for Portland civil litigators.   His rate, however, equals the 2007 median rate

for Portland attorneys at his level of experience and is only slightly higher than the $248.40 per

hour inflated-adjusted average rate for Portland attorneys practicing civil litigation.   I accordingly

find his rate reasonable.

---

[1] The Oregon State Bar Economic Survey is available at:
http://www.osbar.org/surveys_research/snrtoc.html.

[2] The Consumer Price Index is available on the Bureau of Labor Statistics web site at:
http://www.bls.gov/CPI/.

II.    **Hours Reasonably Expended**

    A.    **Time Spent on Matters After Settlement Agreement Reached**

        The offer of judgment explicitly provided that defendants would pay "reasonable, legally recoverable attorney fees and costs incurred by the plaintiff through the date of service of this Offer to Allow Judgment." According to Mr. Berman's billing records, he read and reviewed that offer on December 11, 2008. Therefore, under the terms of the parties' settlement agreement, he cannot recover fees for the time he spent on the case after that date.[3] Accordingly, I deduct five hours from plaintiff's fee request, which reflects the billing entries from December 15, 2008 to March 10, 2009.

    B.    **Time Spent on Clerical Tasks**

        Courts typically consider fees for clerical tasks as overhead expenses reflected in the hourly billing rate, and thus not properly reimbursable in a § 1988 fee award. *See Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) ("It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available.") Several courts have described scheduling as a clerical task and have therefore excluded scheduling tasks from a fee award. *See, L.H. v. Schwarzenegger*, No. 06-2042, 2009 U.S. Dist. LEXIS 24725, at *27 (E.D. Cal. March 5, 2009) (excluding, among other clerical tasks, time billed for scheduling the videotaping of parole revocation hearings);

---

[3] The offer letter is dated December 10, 2008 and provides that plaintiff can recover fees incurred "through the date of service" of the offer. Since defendants did not include a proof of service, I assume that Mr. Berman read the letter the date he received it. I therefore did not exclude .2 hour he expended on December 11, 2008 for "Read and Review R68 offer."

*Clark*, 561 F. Supp. 2d at 1221 (excluding time billed for "scheduling and confirming

appointments and court reporters"); *Frevach v. Multnomah County*, No. CV-99-1295, 2001 U.S.

Dist. LEXIS 22255, at *36-37 (D. Or. Dec. 18, 2001) (excluding scheduling, among other

clerical tasks).

Here, several of Mr. Berman's entries reflect time spent on scheduling matters. The

entries all apparently arise from counsel's efforts to schedule discovery and various other matters

related to the litigation. I therefore deduct 6.2 hours from plaintiff's fee request, which reflects

the total time spent on clerical tasks, as listed in the table below.[4]

| Date | Description | Hours |
|------|-------------|-------|
| 05/13/08 | Read & Review email (RRE) from MC on file timetable | 0.1 |
| 05/13/08 | DSE on file delivery timetable | 0.2 |
| 05/21/08 | DSE on file timetable | 0.2 |
| 05/21/08 | RRE response to inquiry | 0.1 |
| 05/30/08 | TC D Ms. McConnell on CD production timetable | 0.1 |
| 09/01/08 | DSE Requesting Sheriff deposition dates | 0.2 |
| 09/10/08 | DSE on scheduling TC with Keach | 0.2 |
| 09/10/08 | RRE on scheduling | 0.1 |
| 09/11/08 | RRE from Keach on scheduling a call | 0.1 |
| 09/14/08 | DSE to Keach on awaiting call | 0.2 |
| 09/15/08 | Send email/FWD 3 emails of documents, notices, emails to Merin | 0.1 |
| 09/15/08 | Send email/FWD court notice to Keach | 0.1 |
| 09/16/08 | DSE and RRE from court and MC on scheduling R16 6x | 0.5 |
| 09/17/08 | RRE from Keach on calling | 0.1 |
| 09/22/08 | DSE to MC on Silvia deponent availability | 0.2 |
| 09/23/08 | RRE from MC on sending requests in FRCP format and scheduling | 0.1 |
| 09/23/08 | DSE on requests, scheduling | 0.2 |
| 09/23/08 | DSE to Merin's office on deposition scheduling | 0.2 |
| 09/30/08 | RRE from MC on dates | 0.1 |
| 09/30/08 | RRE from MC on more dates, deponents | 0.1 |
| 10/01/08 | RRE from MC on finalizing depositions | 0.1 |
| 10/02/08 | DSE MC on scheduling plaintiffs | 0.2 |

[4] Plaintiff's counsel uses "RRE" to denote "read and review email" and "DSE" to denote "draft and send email." In addition, "MC" apparently refers to opposing counsel.

| 10/02/08 | DSE 3x on scheduling | 0.6 |
|---|---|---|
| 10/02/08 | RRE MC 2x dates | 0.3 |
| 10/03/08 | DSE MC 2x on dates | 0.4 |
| 10/06/08 | DSE MC on dates of depos plaintiffs | 0.2 |
| 10/07/08 | DSE to Merin on scheduling | 0.2 |
| 11/01/08 | RRE from MC on 11/12 date? | 0.1 |
| 11/04/08 | DSE MC confirm 11/7 depos | 0.2 |
| 11/06/08 | DSE/RRE 2x MC confirm ct reptr | 0.5 |
| 11/10/08 | DSE confirm | 0.2 |
| **TOTAL** | | **6.2** |

## C.    Time Spent Conferring With Class Action Counsel

The time entries reflect that plaintiff's counsel spent considerable time, much of it after defendants filed their motion for summary judgment, on the class action allegations in the original and first amended complaint. Mr. Berman spent the majority of this time conferring with outside counsel regarding class action issues. In addition, Mr. Berman spent time attempting to obtain the Multnomah County Detention Center's contraband log, which, according to affidavits he filed earlier in the case, he hoped to use to show that the strip search policy as a whole was ineffective in recovering contraband. The specific entries are set forth in the table below.[5]

| Date | Description | Hours |
|---|---|---|
| 07/20/08 | DSE to Phil Goldsmith (PG) on SOL and class action | 0.2 |
| 07/20/08 | RRE on PG responsive Pipe v. Utah case law | 0.1 |
| 09/08/08 | DSE to class action expert B. Litt | 0.4 |
| 09/08/08 | DSE to strip s. class action expert B. Keach | 0.4 |

------

[5] The entry on November 22, 2008 for .75 hours spent on "Draft Am. Complaint DSE to Merin" appears to encompass both drafting the amended complaint and an email to Merin. I accordingly excluded only .1, which is the likely time Mr. Berman spent sending an email to Merin, but allow recovery for the remaining .65 hours spent drafting Silva's second amended complaint.

| 09/08/08 | RRE response from Keach | 0.1 |
|---|---|---|
| 09/08/08 | DSE follow-up info to Keach | 0.2 |
| 09/09/08 | RRE from Litt, caselaw and responding | 0.4 |
| 09/09/08 | TC Keach on MSJ issues | 0.9 |
| 09/15/08 | TC with potential class counsel Mark Merin | 0.5 |
| 09/17/08 | DSE 2x on R56 declaration to Merin | 0.2 |
| 09/17/08 | RRE Merin recommendations | 0.3 |
| 09/17/08 | DSE to Keach in NY indicating going with Merin in CA | 0.2 |
| 09/17/08 | TC to Merin on depos | 0.1 |
| 09/18/08 | RE from Merin on amending complaint | 0.15 |
| 09/22/08 | DSE to Merin on amending | 0.3 |
| 09/23/08 | TC Merin on depos | 0.1 |
| 09/25/08 | RRE and review proposed pleading from Merin | 0.3 |
| 09/25/08 | DSE request P. Goldsmith draft co-counsel agreements | 0.2 |
| 10/03/08 | RRE MC on contraband log | 0.1 |
| 10/05/08 | DSE/RRE with Goldsmith on fee agreements 3x | 0.6 |
| 10/06/08 | R&R Association filings and pleadings from Merin | 0.2 |
| 10/06/08 | DSE to Merin inquiries on depositions | 0.3 |
| 10/06/08 | RRE from Merin on depos | 0.1 |
| 10/07/08 | DSE MC on contraband log | 0.2 |
| 10/07/08 | DSE to Merin on class issues | 0.4 |
| 10/08/08 | RRE Merin response to get back to me next week | 0.1 |
| 10/08/08 | DSE to Merin – acknowledging | 0.1 |
| 10/16/08 | DSE to Merin awaiting response | 0.1 |
| 10/20/08 | RRE Merin reply on amending for Silvia | 0.1 |
| 10/28/08 | DSE to further litigation with Merin | 0.3 |
| 11/18/08 | DSE to Merin on amending | 0.2 |
| 11/22/08 | Draft Am. Complaint DSE to Merin | 0.1 |
| **TOTAL** | | **7.95** |

While I note that the four separate attorneys that Mr. Berman consulted did not submit their own billing records and so the time listed above is not duplicative, I nonetheless conclude that the hours he spent were not reasonably necessary. Despite the hours Mr. Berman spent in the endeavor, he apparently did not convince an attorney to join him on the case, and instead came to recognize, as he admitted in his declaration accompanying the second amended complaint, that Silvia was the "lone viable claimant." More importantly, Mr. Berman's affidavit

Page 9 - OPINION AND ORDER

in support of his hourly rate indicates that he had prior experience with civil rights cases, including strip searches and "class actions when appropriate." Thus, he should have been well aware, without the assistance of four other attorneys, that the class allegations, which were premised on a blanket strip search policy, faced challenges because different factors could possibly lawfully justify a strip search in each individual plaintiff's case. Plaintiff's counsel, however, apparently did not do the necessary evaluation of the facts he had to support his class action allegations, a task he should have undertaken, at least to some degree, before he filed the complaint. No amount of input from other counsel could change those facts or compensate for Mr. Berman's apparent failure to evaluate them as an initial matter. I therefore conclude that the 7.95 hours he expended speaking to other attorneys about the case was not reasonably necessary.

### D.     Inadequately Described Entries

Plaintiffs who submit illegible, abbreviated time records, in a form not reasonably capable of evaluation, do not satisfy their burden of justifying the hours claimed. *Stewart v. Gates*, 987 F.2d 1450, 1453 (9th Cir. 1993) (time records were "were handwritten and virtually indecipherable"); *see also Frevach*, 2001 U.S. Dist. LEXIS 22255 at *45 (billing entries failed to fully identify the subject of the work performed). In fact, "it is an abuse of discretion to award fees for hours not properly documented." *Stewart*, 987 F.2d at 1452-53 (9th Cir. 1993).

Here, several of the time entries do not indicate whether the work related to Silvia's claim while other entries are simply cryptic in their description of the work involved. Moreover, the entry for a December 10, 2008 for a Rule 16 hearing is puzzling in light of the fact that no hearing took place on that date. I therefore exclude those entries, resulting in a deduction of 3.55 hours, as set forth in the table below.

| Date | Description | Hours |
|------|-------------|-------|
| 06/02/08 | Draft and Send email on discovery of other claimants inc. Silvia | 0.2 |
| 06/03/08 | Read and Review (RRE) email on discovery | 0.15 |
| 06/11/08 | RRE on discovery delivery date | 0.1 |
| 06/11/08 | DSE conferring on Motion to compel outstanding 2 yr records | 0.2 |
| 06/17/08 | DSE a "narrowly tailored request for inmate records" | 0.2 |
| 08/27/08 | Draft and send Requests for Production | 0.5 |
| 09/09/08 | RRE from MC on depositions | 0.1 |
| 09/25/08 | Draft ltr and FAX to MC for deposition dates | 0.4 |
| 09/25/08 | RRE inquiry from MC McConnel | 0.1 |
| 09/29/08 | DSE MC on tardy response | 0.2 |
| 10/03/08 | DSE confer with MC on Motion to compel on interrogatories | 0.2 |
| 10/03/08 | DSE more MC discussions on interrogatories | 0.2 |
| 10/06/08 | DSE to MC on INT ssues [sic] | 0.2 |
| 11/04/08 | DSE MC remove Morrison | 0.2 |
| 11/11/08 | DSE MC on depos | 0.2 |
| 11/11/08 | RRE on MC depos | 0.1 |
| 12/10/08 | R16 hearing | 0.3 |
| **TOTAL** | | **3.55** |

## III.    Reasonableness of the Award in Light of the Results Obtained

"The extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). Courts in the Ninth Circuit employ a two-step process to determine the appropriate deduction of attorney fees to account for limited success. *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003). Under the first step, the court considers whether the plaintiff failed to prevail on claims that were unrelated to the successful claims. *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005). If the claims are unrelated, the court excludes the hours spent on unsuccessful claims from the fee award. *Id.* If the successful and unsuccessful claims are related, however, the court must evaluate whether the attorney fee award is commensurate with the extent of the plaintiff's success. *McCown*, 550 F.3d at 924.

**A.    Unrelated Claims**

Claims are related if they "involve a common core of facts *or* are based on related legal theories." *Webb*, 330 F.3d at 1168.  Claims are unrelated, however, "if the successful and unsuccessful claims are distinctly different *both* legally *and* factually." *Id.* (citation omitted). Thus, courts focus "on whether the unsuccessful and successful claims arose out of the same course of conduct." *Id.*

Here, as pled in her second amended complaint, Silvia's successful claim did not arise out of the same course of conduct as claims of the other plaintiffs that formed the basis of the class allegations and were later voluntarily dismissed.  Before Silvia filed her second amended complaint, the case encompassed strip searches of other individuals at other times and asserted municipal liability on the theory that defendants maintained an unconstitutional written or *de facto* strip search policy.  The amendment, however, included only the strip search of Silvia, named the individual officers involved in her search as defendants, and asserted municipal liability on a theory that the Multnomah County Sheriff's Department failed to adequately train those officers on the charges and prior convictions that justified a strip search.  Accordingly, I find that Silvia's claim is both factually and legally distinct from the claims that the other purported class members voluntarily dismissed.

As a result of my finding that the Silvia's claim is unrelated to the unsuccessful claims of the other class members, I must exclude the hours spent on the unsuccessful claims from the billing record.  I have, however, already excluded those hours because I found that they were not reasonably expended or because the entries were unclear as to whether they related to Silvia's claim.  I therefore do not exclude any further entries here.

Page 12 - OPINION AND ORDER

**B.    Results Obtained**

Courts "must consider the excellence of the overall result" when they assess whether the attorney fee award is commensurate with the extent of the plaintiff's success. *McCown*, 550 F.3d at 924. Thus, courts consider significant nonmonetary results, such as whether the outcome "served the public interest by vindicating important constitutional rights" by, for example, establishing change of policy or serving as a deterrent. *Id.* at 925 (citation omitted).

Here, although Silvia named the Multnomah County Sheriff's Department as a defendant and initially sought injunctive relief, the settlement did not result in a change in policy. However, the $5,001 she received in settlement may serve as a deterrent, albeit relatively minimal, to avoid improper strip searches in the future. More importantly, the amounts I already excluded from the fee award account for the fact that Silvia unreasonably pursued class action allegations which were ultimately unsuccessful. Moreover, after the other deductions, the total fee award is $3,975. I find that fee reasonable in light of the limited success Silvia obtained in her case.

## CONCLUSION

For the reasons set forth above, I grant in part and deny in part Silvia's Motion for Attorneys' Fees. Plaintiff's counsel may recover $3,975 in fees.

IT IS SO ORDERED

Dated this 2̲9̲ th day of April, 2009.

Honorable Paul Papak
United States Magistrate Judge